# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**CRYSTAL S. EPPERSON**  **PLAINTIFF**

v.  CIVIL NO. 1:20-cv-00369-HSO-RHWR

**KILOLO KIJAKAZI,**  **DEFENDANT**
*Acting Commissioner of Social Security*[1]

## REPORT AND RECOMMENDATION

Plaintiff Crystal S. Epperson seeks judicial review of the Commissioner of Social Security's decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 405(g). Having reviewed Plaintiff's Brief [12], Defendant's Brief [14], the administrative record, and relevant law, it is recommended that the decision of the Commissioner be affirmed because the Administrative Law Judge ("ALJ") considered the persuasiveness of each medical opinion and cited substantial evidence supporting her decision.

## I. BACKGROUND

Plaintiff completed three years of college in 2006 and basic electrical journeyman training in 2007. [11] at 188. She reported a history of military service from 1997 to 2001. *Id.* at 83. Plaintiff worked in the past as an administrative clerk, electrician, customer service representative, and medical records clerk. *Id.* at 89, 246-47.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted, in place of Andrew Saul, as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

Plaintiff applied for Title II benefits on October 13, 2019, alleging disability beginning October 2, 2019, when she was 46 years of age. She alleged disability due to spinal stenosis, gastroparesis, urinary incontinence, major depression, constipation, posttraumatic stress disorder ("PTSD"), high blood pressure, and general anxiety. *Id.* at 187. Her application for benefits was denied initially and upon reconsideration. Plaintiff requested a hearing before an ALJ.

After a hearing before an ALJ, the ALJ issued a decision unfavorable to Plaintiff, finding that she suffered from the following severe impairments: PTSD, migraine headaches, fibromyalgia, and degenerative disk disease. *Id.* at 21. The ALJ concluded that Plaintiff could not perform her past work but could perform other jobs existing in significant numbers in the national economy. *Id.* at 30-31. The ALJ relied on the testimony of a vocational expert who testified that Plaintiff could not perform her past relevant work but was able to perform the representative occupations of housekeeping cleaner, silver wrapper, and photocopy machine operator. *Id.*

On appeal to this Court, Plaintiff raises two issues related to her mental capacity only. First, she argues that the ALJ did not use the correct standard to evaluate the opinion of Kendra LaConsay, Psy.D., a clinical psychologist. Second, Plaintiff asserts that substantial evidence does not support the ALJ's residual functional capacity ("RFC") finding because the ALJ did not consider the opinion of Dr. Gustave Sison, Jr. and erred when weighing the opinion of Plaintiff's mental health counselor, Timothy C. Reid, LCSW.

## II. ANALYSIS

### A. Standard of Review

The Court reviews the Commissioner's denial of Social Security benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Salmond v. Berryhill*, 892 F.3d 812, 816-17 (5th Cir. 2018). The Court does not "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *Salmond,* 892 F.3d at 817. "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision. Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citations and punctuation omitted).

"To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps." *Webster v. Kijakazi,* 19 F.4th 715, 718 (2021); *see* 20 C.F.R. § 404.1520(a)(4). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *Id.* "The claimant bears the burden on the first four steps." *Id.* "If the claimant advances that far, the burden shifts to the Commissioner to 'prove the claimant's employability.'" *Id.*

The ALJ must articulate how persuasive he or she finds "all of the medical opinions and all of the prior administrative medical findings" in a claimant's case record. 20 C.F.R. § 404.1520c(b). The five factors for determining the persuasiveness of a medical opinion are: supportability, consistency, relationship with the claimant, specialization, and other factors. *Id.* § 404.1520c(b), (c). Supportability and consistency are the most important factors, and the ALJ must articulate how he or she considered supportability and consistency in evaluating each medical opinion and prior administrative finding. 20 C.F.R. § 404.1520c(a), (b)(2). The ALJ generally is not required to articulate how he or she considered other factors beyond supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

"The more relevant the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

B. <u>The Opinion of Clinical Psychologist, Dr. LaConsay</u>

Plaintiff asserts that the ALJ did not properly consider the opinion of clinical psychologist, Dr. LaConsay. [12] at 5-6. Plaintiff saw Dr. LaConsay one time for a psychological evaluation on March 26, 2020. [11] at 359-61. Dr. LaConsay completed a Psychological Evaluation Report, *id.* at 359-61, and a Questionnaire, *id.* at 690-98.

The Questionnaire was created by the VA and entitled "Review PTSD Disability Benefits Questionnaire." *Id.* at 27, 690-704.

The ALJ's decision summarizes Dr. LaConsay's Psychological Evaluation Report as follows:

> On March 26, 2020, the claimant presented for a psychological evaluation on referral from her attorney's office, which was performed by Kendra LaConsay, Psy.D. The claimant reported a history of military service from 1997 to 2001. She was noted to have a history of anxiety while in the service and was eventually diagnosed with major depressive disorder [in] 2006. The claimant reported a history [of] other mental health conditions of posttraumatic stress disorder, panic disorder, generalized anxiety disorder, and attention deficit disorder. She noted that she was admitted for inpatient psychiatric treatment after an overdose. The claimant's ongoing medications for her mental conditions were reported to be Amitriptyline and Effexor. The claimant reported that she could no longer work due to trust issues, poor interpersonal skills, poor resolution skills, and chronic pain. The claimant was subjected to the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) test. Dr. LaConsay provided the following medical source statement. The claimant's ability to sustain concentration and persist in work-related activity at a reasonable pace, to maintain effective social interaction on a consistent and independent basis, with supervisors, coworker, and the public, and to deal with the normal pressures in a competitive work setting is extremely impaired.

*Id.* at 27.

The ALJ found Dr. LaConsay's opinion that Plaintiff had extreme occupational impairment unpersuasive for three reasons. *Id.* First, Dr. LaConsay relied heavily on the Minnesota Multiphasic Personality Inventory-2 for support. The ALJ noted that this test was "a 'self-report' and is therefore not an objective test." *Id.* Second, the ALJ found that Dr. LaConsay's opinion was inconsistent with the section of her Report showing Plaintiff's mental status exam was normal except for an anxious and depressed mood. *Id.* at 27, 360.

Third, the ALJ concluded that Dr. LaConsay's opinion was inconsistent with other medical records. *Id.* at 27. She credited the State agency consultants' findings of fact and analysis of the evidence more because the assessments were supported by narrative findings and specific cites to the record. *Id.* at 28, 93-114. She compared Dr. LaConsay's March 26, 2020 assessment with a March 4, 2020, assessment that was completed at the Department of Veterans Affairs ("VA") on March 4, 2020. The ALJ noted that the VA evaluation was conducted because Plaintiff requested an individual session regarding her PTSD. *Id.* at 22, 29. The ALJ observed that the VA evaluation showed that Plaintiff had made progress with breathing techniques to aid with pain management and preparing for a wedding. *Id.* at 22, 27, 29. Plaintiff was dressed appropriately, arrived on time, made appropriate eye contact, was oriented x 4 (person, place, time, situation), had intact memory and concentration, had logical goal-directed thoughts, denied suicidal, homicidal, or violent thoughts, and described her mood as "overwhelmed but getting better." *Id.* at 22, 29, 411. The ALJ noted the examiner's conclusion that Plaintiff appeared stable, with outpatient treatment the appropriate level of care. *Id.* at 27, 411.

After evaluating Dr. LaConsay's Psychological Examination Report, the ALJ turned to the Questionnaire completed by Dr. LaConsay and made an incorrect statement. The ALJ stated that "[t]his opinion was formulated for use by the Department of Veterans Affairs." *Id.* at 27. Plaintiff asserts, and the Commissioner agrees, that this statement is incorrect because Dr. LaConsay was not a VA physician. She was a clinical psychologist hired by Plaintiff's counsel to perform a

6

one-time evaluation. Dr. LaConsay merely completed a form Questionnaire used by the VA.

The ALJ's decision should not be reversed because the ALJ incorrectly stated that the Questionnaire completed by Dr. LaConsay was an opinion "formulated for use of the Department of Veterans Affairs." *Id.* at 27. As the ALJ correctly observed, the Questionnaire completed by Dr. LaConsay was a "checkmark form." *Id.* Plaintiff does not attempt to show that the Questionnaire completed by Dr. LaConsay contained more or different information than her Psychological Examination Report. In fact, Dr. LaConsay crossed out the portion of the Questionnaire entitled "Clinical Findings" and referred the reader to the Psychological Examination Report for those findings. *Id.* at 701. While Dr. LaConsay checked a box in the Questionnaire indicating that Plaintiff experienced total occupational impairment, *id.* at 700, the ALJ was not required to provide any analysis about how she considered this "inherently neither valuable nor persuasive" statement because it is a statement on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c).

C. <u>Substantial Evidence Supports the ALJ's RFC finding</u>

Plaintiff asserts that the ALJ erred by not assessing Plaintiff's RFC based on all of the medical evidence in the record. She alleges that the ALJ failed to consider a medical assessment performed by Dr. Sison and erred in considering the opinion of Plaintiff's mental health counselor, Mr. Reid.

Dr. Sison evaluated Plaintiff for PTSD as part of a Compensation and Pension exam at the VA on December 3, 2018, prior to Plaintiff's alleged onset date of October

2, 2019. *Id.* at 690, 698. Dr. Sison determined that Plaintiff met the criteria for PTSD and had a "clinically significant distress or impairment in social, occupational, or other important areas of functioning" with "difficulty in adapting to stressful circumstances, including work or a worklike setting." *Id.* at 696.

Plaintiff's assertion that the ALJ "did not mention this examination or any of the opinions of Dr. Sison that were contained in the examination" is incorrect. [12] at 8. The ALJ summarized Dr. Sison's report and adopted his finding that Plaintiff had PTSD. [11] at 21, 25, 28. The ALJ included limitations in the RFC to account for Plaintiff's limitations due to PTSD. Plaintiff was limited "to jobs with no interaction with the general public, no tandem tasks, and only occasional interaction with coworkers She is limited to simple, routine, repetitive tasks with few if any work places [sic] changes." *Id.* at 24. The ALJ was not required to provide any explanation of how she considered Dr. Sison's opinion that Plaintiff was occupationally impaired because this type of statement is "inherently neither valuable nor persuasive" because it is a statement on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c).

Mr. Reid, Plaintiff's mental health counselor, completed a form provided by the Office of Disability Determination Services entitled "Disability Report Form." [11] at 358. In the space provided for "diagnoses/prognosis/duration," Mr. Reid stated, "The patient's diagnosis is PTSD. Her functional limitations include social interaction and adapting. Due to her traumatic history, Crystal is unable to work due to multiple

8

traumatic triggers. Her inability to adapt to her environment stems from a generalization of trauma across nearly all social environments." [11] at 358.

The ALJ found Mr. Reid's opinion unpersuasive because "[i]t is not supported with a reasonable narrative explanation. Further, it is not consistent with the claimant's response to treatment and her continued activities." *Id.* at 26. Plaintiff takes issue with the ALJ's decision to fault Mr. Reid for not providing a narrative explanation when the form he completed "was sent to him by the Office of Disability Determination Services." [12] at 8. The ALJ, however, was required to assess the supportability of Mr. Reid's assessment, and she did so by observing that the assessment lacked an accompanying narrative explanation. She also compared Mr. Reid's actual treatment records, which showed that on November 12, 2019, just after her alleged onset date of October 2, 2019, Plaintiff had made some improvement. *Id.* at 28, 715.

Plaintiff argues that "[a]s the Plaintiff's treating practitioner, Mr. Reid "was in the best position to know of [sic] what limitations the Plaintiff would have in a work environment." [12] at 9. In March of 2017, however, the Social Security Administration amended their regulations to abrogate the treating source rule, among other changes. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017); The revised regulations do not create an automatic hierarchy for treating sources and "instead focus adjudication more on the persuasiveness of the content of the evidence." *Id.* The new regulations focus on the content of the medical opinion and

"less on weighing treating relationships against each other." *Id.*; *see* 20 C.F.R. § 404.1520c.

Plaintiff faults the ALJ for relying "mostly" on "one VA visit on March 4, 2020" when "there are more than 200 pages of records from the VA . . . ." [12] at 9. The ALJ did consider other VA records, however. The ALJ's decision references a January 2, 2020 individual assessment by the VA, which showed that Plaintiff displayed an appropriate attitude and good rapport with the examiner. *Id.* at 22. While Plaintiff's mood was frustrated, her eye contact was appropriate, and her speech was normal. *Id.* The ALJ also referred to VA medical records dated September 17, 2019, which indicated that Plaintiff was the primary caregiver for her adult daughter with autism. *Id.* at 23, 708. The ALJ considered this activity of daily living inconsistent with total occupational impairment, as well as others. *Id.* at 23, 715. The ALJ observed that Plaintiff cooked with her husband and baked every two weeks, did laundry on Monday and Tuesday, cleaned the bathroom once every two weeks, sometimes swept, and made the bed most mornings. *Id.*

Plaintiff is asserting that the record supports greater functional limitations than found by the ALJ, but the Court may not reweigh the evidence. While Plaintiff points to evidence in the record that could have supported a different conclusion, it is the sole responsibility of the ALJ to weigh the competing evidence to determine a claimant's RFC. The fact that the ALJ viewed the evidence differently than Plaintiff is not grounds for reversal. Substantial evidence supports the ALJ's RFC determination, and the Court is not at liberty, under the law, to change the outcome.

### III. RECOMMENDATION

The ALJ's August 4, 2020, decision should be affirmed, and Plaintiff's appeal dismissed with prejudice.

### IV. NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U.Civ.R. 72(a)(3).

A district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 24th day of May, 2022.

*s/ Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE